Good morning. May it please the Court, Karen Schoen on behalf of the United States. And if I may, I'd like to reserve three minutes for rebuttal time. Please watch the clock. The purpose of bad faith fee awards under aegis subsection B is to sanction conduct that abuses the judicial process. The fee award here overlooks this crucial distinction between aegis subsection B and aegis subsection D, a fee shifting provision. In awarding fees for virtually all the work a plaintiff's counsel performed in this case, the district court effectively allowed plaintiffs to make an end run around the exclusion of torts cases from aegis subsection D and the norm that attorneys' fees typically come from the judgment in tort cases. In particular, the award violates three fundamental principles. First, the proper causation standard was not applied. The Supreme Court made clear in Goodyear that a but-for causation standard applies. Here, however, the award includes fees that would have been incurred even in the case of bad faith conduct. Second, a substantial portion of the fee award was improperly based solely on pre-litigation conduct unrelated to the conduct of the litigation itself. And third, there was no basis to award fees in the prior appeal and in the fee proceedings on remand because the government did not act in bad faith in either of those phases of the litigation. Unless the court wants to start someplace else, I thought maybe we'd start with Goodyear and the causation standard. I think as plaintiffs' own brief and the declaration that they submitted to the district court make clear, the district court awarded fees for work that would have been performed even in the absence of the bad faith conduct. And we went through three examples in our brief, and I think they should be fairly obvious without having to sort of parse through each entry in the billing records, that the but-for causation standard was not applied. I think, and the first, the fee award includes work performed for lieu, even though the three instances of bad faith related solely to plaintiff how. As plaintiffs explain, a lot of the work overlapped between the two plaintiffs. Counsel said that they excluded work performed solely for lieu, but they left in work that overlapped between the two I mean, to the extent the work was also performed for lieu, it could not have been incurred solely because of the bad faith conduct. So opposing counsel makes some arguments why Goodyear is not applicable here. Do you want to address those? Sure, Your Honor. I mean, I think it should be clear that Goodyear applies. Goodyear involved bad faith fee awards, which is exactly what we're dealing with here. I mean, the fact that it was in the private context is of no moment. As this court has recognized in Barry v. Bowman, for example, the Aegis subsection B codified the common law bad faith exception to the American rule and made it applicable to the government. And so in a sense, it basically waives, Aegis subsection B waives the government's sovereign immunity and holds the government to the same standard and allows district courts to exercise their inherent authority to award bad faith fees to the same extent that they would in private litigation. And so I think, so I think it should be clear on that basis that Goodyear still applies. And the fact that Goodyear was more recently decided also does not matter because it's well established that a case like Goodyear applies to cases still open on direct review, which this case obviously still is. So Goodyear expressly didn't overrule Chambers. It said Chambers is an example of our but-for ruling. But in that case, it was okay to shift all of the fees. Well, in that case, I think what the court said in Chambers, and I'm paraphrasing because I don't have the exact language in front of me, but I think the court viewed it as sort of a sorted scheme, right, from the very beginning. And that sort of all of the conduct from the very beginning of the case, there was bad faith conduct. And so there, what Goodyear recognized was that the court in Chambers was still applying a but-for standard. It was just that all of the fees, because of the bad faith from the inception of the case, all of the fees were warranted. But that's not the sort of case we have here. This isn't a case of defending the indefensible, as plaintiffs suggest. I mean, there's no dispute that Powell's conduct was reprehensible. And in fact, the government criminally prosecuted him. But that does not automatically make the United States vicariously liable any time that an employee misbehaves, whether that's criminally or not. And here, the United States had good faith defenses as to why it should not be liable for Powell's misconduct. One of those arguments, for example, was that the conduct was outside the scope of his employment. Another argument was that the intentional torts exception barred plaintiffs' claims. And the prior panel expressly held that that was not made in bad faith. And so, I think here, the government had good faith defenses that the United States should not be liable, and the government was entitled to make those. And so, it should only be the fees incurred solely because of the three instances of bad faith that the district court found and the prior panel upheld. That should be the basis for any fee award. Some of the issues that the prior panel found to be in bad faith occurred outside of the courtroom or outside of litigation context. How should we deal with those? Well, I think those two instances of what we call pre-litigation bad faith conduct cannot be the basis for a fee award here. Those had no bearing on the litigation itself. And the purpose of a bad faith fee award is to sanction conduct that abuses the judicial process. And awarding fees for that conduct, for which the plaintiffs already received damages on the merits, would go beyond the legal damages available and effectively become an award of punitive damages, which exceeds the district court's inherent authority to sanction conduct and also violates the bar on punitive damages in the Federal Tort Claims Act. What about something like the failure to process Howe's asylum claim, which we believe constituted bad faith? Right. Well, that exact... And the prior panel actually upheld the award of damages for five of the seven years of that delay. And so to the extent that's part of her, the underlying substantive claim that was part of her damages, it's not appropriate to award fees on top of that. And I think Rodriguez and other cases, the Association of Flight Attendants, make that clear. A court can So in response to a substantive claim, whether that's before the litigation or during the litigation, but in response to a substantive claim, what a court can't do, though, is award fees for conduct underlying the substantive claim. But that's exactly the situation that we have here, because both of those instances of pre-litigation bad faith, both of those sort of factored into the court's damages award. I have a somewhat, I guess, metaphysical question. So when I ask it, please take it in a sense. So I, and I, when I preface this by saying, I'm not accusing you of engaging in any bad faith in this appeal. Right. But I'm just curious, under your reading of Goodyear, if the plaintiffs in this case are trying to, in a sense, defend the district court's judgment, and they have to incur fees to appeal in this court, under Goodyear's but-for test, would they be able to obtain fees for defending the district court's judgment in this case? No, Your Honor. And I mean, I think the Supreme Court made that clear in Cooter and Gell, and this court has extended the reasoning in a series of cases, the Lockery case, for example. But you know, what the Supreme Court said in Cooter and Gell was that, you know, that bad faith does not extend throughout the litigation. Right. And bad faith fee award cannot include fees incurred in connection with the appeal of a bad faith fee award itself. And so I think that holding applies squarely here, both in the prior appeal, to the extent the fees were awarded in the prior appeal, and with respect to plaintiffs now, excuse me, defending the fee award in this appeal. And I think related to that, and because I think this was in the Lockery case, and it was applying the reasoning of Cooter and Gell, this court also held that you don't get so-called fees-on-fees. Right. And it's all sort of the same idea. Do you want to reserve the rest of your time for rebuttal? Unless the panel has further questions on this. Okay. Then I will reserve the remainder of my time. Thank you. Good morning. V. James D. Simone on behalf of plaintiffs Zhui Liu and Zhe Hao. May it please the Court. In this case, the District Court did rigorously follow what the Ninth Circuit directed it to do by tracing all of the fees that were awarded to the bad faith conduct of the United States of America. And when we look at the law of the case doctrine, the Ninth Circuit in its previous decision, I'll call it Zhui Liu II, since this is the third time I'm arguing this case in front of the Ninth Circuit, and Zhui Liu II directed the Court to find what fees were traceable to the different instances of bad faith, including the pre-litigation bad faith. And this is key because that pre-litigation bad faith on the part of the United States of America really influenced the entire litigation. And if you look at the briefing of the United States of America, their principal brief, it's almost admitted by them. Because in the initial stages of the case, and if you look at, for instance, my time records from 2000 to the year 2006, we defended a number of successive motions to dismiss. And the premise of those motions to dismiss were, for the most part, based on two arguments. One, that Thomas Powell had engaged in an assault, and he assaulted Zhui Liu, and two, that the sexual nature of his conduct in the kissing and the hugging of Zhui Liu meant it was So, when you- Were those arguments in bad faith, in your view? It wasn't that the arguments were in bad faith, Your Honor, but in terms of why they were able, they were only able to make those arguments because of the bad faith conduct of the United States. The underlying conduct. The opposing counsel says, well, underlying conduct was the subject of the damages claim, but underlying conduct is not susceptible to the bad faith inherent powers fees, because it wasn't a bad faith act within the purview of the court. Well, and I think that that's, and there's just no, that's not the law in the Ninth Circuit. The Rodriguez case clearly states that you could look at pre- litigation bad faith that made up for the basis of the damages in the Rodriguez case. I thought in Rodriguez, they said there was so little evidence that would support a search that was bad faith to argue that a search was warranted. That's why I asked you whether the argument in court was in bad faith. Well, that's right, but extending that a little further, Your Honor, if there was so little evidence that would justify the search of the Rodriguez home, that is what caused the Rodriguez's damages there. In the same way that the delay in adjudicating Zhe Hao's asylum application caused the damages here, but it doesn't mean that all of the time that we spent to prove those damages, that it should not be compensable because it was related to the bad faith. And we had... Let me go back to Goodyear for a moment. Opposing counsel says Goodyear was decided while this case is pending on appeal, so we're bound to apply it. And you argue that, no, we should look at the prior panel decision. So which one prevails? The Supreme Court's decision to this pending case or the prior decision before Goodyear? I think the best view is to harmonize Goodyear with the EAJA because in Goodyear, of course, it just looks at a discovery sanction. So by definition, you couldn't have... You couldn't be looking at pre-litigation bad faith for a discovery sanction because discovery hasn't started yet. But when we look at the Chambers case, which is still good law and, of course, is a United States opinion, and we harmonize Chambers with the Goodyear opinion, in Chambers, the out-of-court conduct, the fraudulent conduct that the plaintiff engaged in in Chambers in order to deprive the court of jurisdiction was still taken into consideration in the bad faith analysis. Just as here, the conduct of... The whole process of litigation was part of a sordid scheme to do the wrong thing to the other side. So in your view, was the government's defense here part of a sordid scheme to deprive the plaintiffs? Well, I won't use the word sordid, but clearly, the government has tried to deprive plaintiffs of compensation. We remember these... Right, but they raised defenses, which you said were not themselves in bad faith. I'm not sure why that makes it... Raising a defense to a claim is not a sordid scheme. Right, but remember, in Chambers, the entirety of the fees were awarded, just as the district court did in the Goodyear case, which, of course, was overturned by the United States Supreme Court. This case presents a very different question to the panel. In this case, you had Judge Marshall, who, through our declaration and through going through each and every one of our time records, painstakingly... amount of fees by over 500 hours, $200,000 worth of time, when it did not relate to each of the instances of the three instances of bad faith, which were upheld by the Ninth Circuit in Juelu, too. So while, yes, Chambers has the language, and it could be distinguished from Goodyear, that distinction does not apply to the Juelu case, because Judge Marshall did segregate, separate out the fees that were related solely to Juelu and some of the other matters that had nothing to do with the bad faith. And then, Your Honor, when you look at the arguments that the United States makes in their briefing, right, their principal brief, on page 15 and 16 of the principal brief, they admit that their argument on appeal dealt with the consent argument and that damages were awarded for the assault and battery. And, again, on the initial motions to dismiss, it was all that the assault and battery and the sexual nature of that conduct meant that we could nothing. And they made that argument, if you look at the closing argument of opposing counsel that we put in the supplemental excerpts of record, they continued to make that argument, not only in the trial of this matter, but in the second appeal. So in that way, going to why we should be able to recover fees on the appeal, they were still making the arguments that, one, related to the bad faith, because without the assault, if you didn't have bad faith, you'd have no assault. If you didn't have the assault, they wouldn't have had the affirmative defense. And in terms of, they quoted the Harnum case, an Eighth Circuit case, saying it somehow had to interfere with the proceedings in front of the judiciary here. Those affirmative defenses were what we had to fight against every step of the way for these 18 years. So in that way, it does satisfy the good year, but for a standard. I mean, I think you have to read good year in light of the fact that you've got pre-litigation bad faith here that has to be taken into consideration, so it doesn't fit nicely into that. But in terms of what this court should be looking at, in Juelu 2, the Ninth Circuit directed Judge Marshall to look at that pre-litigation bad faith conduct. The defense would like to argue that you can't possibly look at that here because it didn't affect the litigation at all. But that's just turning a blind eye towards what the litigation actually dealt with. I mean, when we were trying this case in front of Judge Marshall, their argument was, her biggest amount of suffering, Zhe Hao, was from the assault. And indeed, she testified in deposition that during her encounter with Thomas Powell, the worst part of it was when he spanked her and the physical touching. But when you looked at the damages, the longstanding damages that Zhe Hao suffered, being separated from her child, her child was in China for seven years, five of the seven are compensable here. And so that separation from her child, when she wrote the letter to the judge who was handling the criminal case and put forth of how horrible this was to be separated from her child, that's where the damages came from. So in terms of, did the government's bad faith impact this litigation? Was the way in which the litigation ensued, was it affected? Was there a causal connection between that bad faith? And what we had to do as plaintiffs to prove our client's damages, it permeated every aspect of that. And so when we go back to the standard here, the standard has to be whether Judge Marshall abused her discretion, whether her decision to trace those fees to the bad faith conduct of the United States was clearly erroneous. It's not clearly erroneous under the Goodyear standard of but for, because but for those, that bad faith, the litigation would have taken a very different turn. They wouldn't have had those affirmative defenses with respect to Zhe Hao. And when you say that bad faith, you mean the bad faith pre-litigation activity? The bad faith pre-litigation activity in failing to intervene and allowing Zhe Hao to be assaulted by Thomas Powell on video when they were just, when those government agents were closer to her than I am to you right now. And we're in a position to intervene and stop that from happening. And then if you look at, again, if you look at their principle brief, when we go through both the trial and the second appeal, the primary arguments are with respect to Zhe Hao, consent, which the court said, the court of appeal agreed with Judge Marshall's opinion that that was meritless and offensive. So while they didn't specifically say, we too would find this in bad faith. And they said, maybe somebody could come to a different conclusion. They still found it to be meritless and offensive. With respect to the delay, they said the government has given no reason whatsoever as to why they delayed Zhe Hao's asylum application for five years pending the criminal trial of Thomas Powell. So again, if the government gives no reason for that, then that would seem like it's frivolous in order to argue that somehow that it should not be part of the damages. And so again, the bad faith of the United States infected this case through the court of appeal. And then going to Zhe Lu Wan, the first court of appeal decision, if you look at what we were facing there, and if you read the decision, for instance, at page 948, basically it talks about even though the employer has not authorized to commit these crimes, what were those crimes? The sexual assault. That's where they were getting out of the course and scope of employment because it's a long line. I mean, normally when someone takes in and uses the trappings of a job such as here approving asylum application and does it if they assault someone, if you had hit them with a hammer, there's a case, the old case, then it's within the course and scope of employment. But there's a line of California law that draws the line. Mary M. says police officers can be held liable if they sexually assault someone because of their badge and power, but everyone else you would have to prove negligence on the part of the employer to hold them liable. And that's where the government was using the sexual nature of Powell's interaction with Jay Howe, which only came after the money was exchanged, or the money was talked about. Then he tried to see if he could do more with her, frankly. And they were using that as an out. And we had to defend that through years of successive motions to dismiss and then getting a published appellate decision where the court said no. The dissent focuses on torts, for instance, against employees engaging in sexual misconduct. This is at page 950 of Juilliard 1. The torts which the plaintiffs can be compensated for are the infliction of emotional distress and interference with civil rights. And the court emphasized that these are injuries and causes of action that were distinct from the battery. If you didn't have the assault, if you didn't have the bad faith, you wouldn't have the battery and you wouldn't have had the affirmative defense. So we satisfy the but-for requirement of Goodyear. So I know we took the position in the brief that Goodyear doesn't apply at all. I mean, in preparing for this argument, I think the better view is that, yes, Goodyear did come down. Judge Marshall didn't have the benefit of applying the Goodyear decision because it came down after she rendered her decision on the attorney's fees here. But what you do have is, in terms of the evidence that's before this court, that we do satisfy this but-for analysis. And what counsel has come up with in terms of us getting awarded fees for virtually all of the work that we did, I mean, that's just simply not true. A lot of the time that was taken out, I mean, you know, if you look at it, we had the case for such a long time. The amount of fees on the underlying case that were awarded were $660,000. I mean, it's not a case that was over-litigated or anything like that. It's just a case where we worked hard over the years and the fees that were awarded were directly related to the bad faith here. And I think that if you look at both chambers where the court did uphold an award for conduct that was outside the litigation and you get to an affirmance of Judge Marshall's decision and that she wasn't clearly erroneous in that making that decision. And I also think that if you go through, for instance, my time records which are found on the excerpts of the record from-excuse me, Your Honor. And you go from the first part of the case, you'll see all the time is spent on the legal pleadings. Yes, there's conversations with my client here and there. I think I'm out of time. Thank you very much. Thank you, Your Honor. I'd like to try to address a few of the points that Plaintiff's counsel made. He spent some time talking about fees incurred in the prior appeal and the government's making the consent argument. And there are a few points I'd like to make there. First, it's true the prior panel upheld the district court's finding that the consent argument was made in bad faith. Upheld that is not clearly erroneous. But the panel also went out of its way to say that a finding of bad faith was not compelled. And I don't think it's clear that the prior panel thought that it was bad for the government to sort of renew that consent argument and that the prior panel thought fees on appeal were warranted for that portion. But I think even for the sake of argument, if the prior panel did think that the government was pursuing that consent argument in bad faith, that's only a small portion of the appeal. There were two separate parts to the appeal. The appeal of the merits judgment and the appeal of the fee award. As we discussed in response to Judge Owen's question, the first time I was up here, the fees incurred in defending or the fees incurred in the context of the appeal of the fee award, those cannot properly be included in a bad faith fee award. And so that just leaves... Are those properly before the district court? Because there's no request for attorney's fees on appeal filed with us. So is that appropriate to bring it before the district court? I think it's an open question. Under this circuit's rules, a party generally must make a request for fees on appeal to this court in the first instance. And then this court can decide whether to send it to the district court or to handle the fee request on its own. In NRDC v. Winter, this court said that in the context of fees under EGIS subsection D, the fee shifting provision, that a party can go to district court in the first instance. But the court hasn't addressed what happens when you're seeking fees on appeal in the context of EGIS subsection B. And I think the inquiries are very different because under EGIS subsection D, fees are shifted generally for the entirety of the litigation. There's sort of a threshold fee eligibility determination made. And then the presumption is that you get fees for the entire course of litigation. As we've been discussing, under EGIS subsection B, fees are only awarded for discrete portions of the litigation. Those fees incurred because of the specific instances of bad faith conduct. And so it seems, just given the nature of the inquiry, that it would be more appropriate for the Court of Appeals to make that fee eligibility determination itself and decide whether there was, in fact, bad faith conduct in its proceedings and whether a fee award was warranted to sanction that bad faith conduct. And I think here, you know, and I think this sort of illustrates the problem because, you know, it's one thing for the panel to uphold as not clearly erroneous the district court's finding that the consent argument was in bad faith and to give the district court discretion to award fees to sanction that conduct as part of its sort of policing or management of its own proceedings. But it's another thing to then say that that necessarily requires that fees be awarded on appeal when the Court of Appeals might not have found that fees in the first instance. I think that's sort of an anomalous result. But again, assuming even for the sake of argument, if that consent argument was made in bad faith, that was only a small portion of the appeal. Again, with respect to the challenge to the fee award, there's no basis to award fees for that portion of the appeal. And then with respect to the merits, the government still made other  We continued to make the intentional torts argument, which the panel expressly reversed as not being in bad faith. And there were other arguments on appeal as well. And so I think only a small portion, if any, of the fees on appeal would be warranted because of that consent argument. But there was no effort by the district court or plaintiffs in sort of tracing fees and the signing codes to strip out those other portions of the appeal. And I think if I understood plaintiffs' counsel correctly, I think they were also suggesting that in upholding the findings of pre-litigation bad faith, the prior panel was directing the district court to award fees on that basis. And I don't think the prior panel's opinion can be read that way because I think any such holding would have been inconsistent with Rodriguez and Association of Flight Attendants and sort of the fundamental principle that bad faith fee awards are meant to sanction abuses of the judicial process, not the underlying conduct. And so I think to the extent you're looking at any fees incurred before 2011, which is when the government first made the consent argument, any fees before that date were incurred solely because of those two instances of pre-litigation bad faith. And I think those necessarily have to be excluded. I think, yes. So if the panel has any further questions, I'd be happy to answer them. Okay. Thank you.
judges: Ikuta, Owens, Gilliam